UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| LAMAR WOODHOUSE, | : | |
| | : | |
| Plaintiff, | : | PRISONER |
| v. | : | No. 3: 08cv1092 (MRK) |
| | : | |
| CAPTAIN TIMOTHY CARROLL, | : | |
| | : | |
| Defendant. | : | |

## RULING AND ORDER

Plaintiff Lamar Woodhouse, currently incarcerated and proceeding *pro se* and *in forma pauperis*, has brought suit under 42 U.S.C. § 1983 against Captain Timothy Carroll. Mr. Woodhouse alleges that Captain Carroll – the Unit Manager of the housing unit in which Mr. Woodhouse was held as a pretrial detainee at Northern Correctional Institution ("Northern") – failed to protect Mr. Woodhouse from an attack on December 19, 2007 by a sentenced inmate as the inmate was being transferred into Mr. Woodhouse's cell. *See* Compl. [doc. # 2]. Mr. Woodhouse seeks compensatory and punitive damages from Captain Carroll in his personal capacity[1] for injuries Mr. Woodhouse allegedly suffered as a result of the attack. *See id.* ¶ 12.

Both Mr. Woodhouse and Captain Carroll have moved for summary judgment. *See* Pl.'s Mot. for Summ. J. [doc. # 29]; Def.'s Mot. for Summ. J. [doc. # 32]. As explained below, the Court concludes that Mr. Woodhouse has failed to exhaust his administrative remedies, and therefore the Prison Litigation Reform Act (PLRA) requires the Court to GRANT Captain Carroll's Motion for Summary Judgment and DENY the Motion for Summary Judgment of Mr. Woodhouse. *See* 42 U.S.C. §1997e(a).

---

[1] Mr. Woodhouse initially sought damages from Captain Carroll in his official capacity as well, *see* Compl. [doc. # 2] ¶ 12, but the Court dismissed all official-capacity claims against Captain Carroll on the basis of the Eleventh Amendment and pursuant to 28 U.S.C. §1915A(b)(2). *See* Initial Review Order [doc. # 4] at 2-3.

# I.

The Court assumes the parties familiarity with the facts underlying this case and only discusses those facts here that are necessary for the resolution of the pending motions for summary judgment. Suffice it to say for present purposes that Mr. Woodhouse claims that while he was being held in administrative segregation at Northern as a pretrial detainee, Captain Carroll decided to place a sentenced inmate, Mr. Andrews, in Mr. Woodhouse's cell, allegedly against Mr. Woodhouse's expressed wishes. *See* Compl. [doc. # 2] ¶¶ 1-5. Pursuant to prison policy, both inmates were handcuffed during the cell change until the cell door was re-secured. *See id.* ¶ 6. Upon being placed in the cell, Mr. Andrews' handcuffs were removed first, at which point he allegedly took the opportunity to grab a sharpened toothbrush, using it to attack the still-cuffed Mr. Woodhouse. *See id.* ¶¶ 7-10.

Consistent with Mr. Woodhouse's *pro se* status, the Court construes his Complaint liberally. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). So construed, Mr. Woodhouse appears to assert two distinct claims, both of which he alleges caused him to suffer physical and emotional injuries. *See* Compl. [doc. # 2] ¶ 11. First, Mr. Woodhouse appears to assert a claim of deliberate indifference premised on the correctional officers' alleged failure to protect him from Mr. Andrews. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009); *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001). Second, Mr. Woodhouse appears to base a claim upon the fact that he, while held as a pretrial detainee, was forced to share a cell with a sentenced inmate – a claim that would presumably also arise under the Due Process Clause. *See Benjamin*, 264 F.3d at 188; *Silvera v. Conn. Dep't of Corr.*, ___ F. Supp. 2d ___, No. 3:09CV1398(MRK), 2010 WL 2232471, at *11-13 (D. Conn. May 27, 2010).

## II.

The purpose of motions for summary judgment is to determine whether there are any facts in genuine dispute that require a jury to resolve. *See* Fed. R. Civ. P. 56. Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party, *see Anderson*, 477 U.S. at 255; *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). If the moving party carries his burden, the party opposing summary judgment "may not rely merely on allegations or denials," but rather, must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). In sum, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "[i]f the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted," *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III.

The undisputed facts of this case establish that Captain Carroll is entitled to summary judgment on the basis of Mr. Woodhouse's failure to exhaust his administration remedies. The PLRA mandates exhaustion of administrative remedies before a prisoner is permitted to file a complaint in federal court. *See* 42 U.S.C. §1997e(a); *Booth v. Churner*, 532 U.S. 731, 739 (2001) ("[The PLRA] eliminated . . . the discretion to dispense with administrative exhaustion."). To properly exhaust, inmates are required to adhere to the prison's rules regarding administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Moreover, an inmate must exhaust his administrative remedies *before* filing a federal action; post-filing exhaustion is not sufficient. *See Woodford*, 548 U.S. at 93; *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001); *Chavis v. Goord*, 333 Fed. Appx. 641, 642 (2d Cir. 2009) (summary order). The "dominant concern" of the exhaustion requirement is "to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court." *Porter v. Nussle*, 534 U.S. 516, 528 (2002); *see also Jones*, 549 U.S. at 219; *Booth*, 532 U.S. at 741.

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled "Inmate Administrative Remedies." *See* Admin. Directive 9.6 (Mar. 5, 2003), attached as Ex. 17 to Def.'s Mot. for Summ. J. [doc. # 32]. This Directive applies to all matters related to "[t]he existence or substance of policies, rules, and procedures of the unit, division and Department" or " access to privileges, programs and services, conditions of

4

care or supervision and living unit conditions within the authority of the Department of Correction." *Id.* Inmates are required to file a grievance form regarding complaints covered by the Directive; if denied, grievances are subject to three levels of appellate review. *See id.*

Mr. Woodhouse readily concedes that he did not file a grievance regarding the alleged failure to protect him from Mr. Andrews' attack or the fact that he was forced to share a cell with a sentenced inmate. *See* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [doc. # 37] at 3-4. Mr. Woodhouse argues, however, in conclusory fashion, that he is "not required to exhaust [his] administrative remedies in order to pursue [his] failure to protect claim[] where administrative action could afford him neither meaningful review nor appropriate remedy." *Id.* (quoting *Odumosu v. Keller*, 205 F.3d 1324, at *2 (2d Cir. 2000) (unpublished)); *see also Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (discussing the three exceptions to the PLRA's administrative exhaustion requirement). Mr. Woodhouse's argument, however, is unavailing.

In *Odumosu*, the Second Circuit did indeed find that the plaintiff-prisoner was not required to exhaust his administrative remedies before bringing a *Bivens* action against federal correctional officers who allegedly failed to protect him. *See Odumosu*, 205 F.3d 1324, at *2. Its reasoning, however, necessarily confines *Odumosu* to a particular set of facts not present here. In *Odumosu*, the prisoner-plaintiff sought monetary and declaratory relief. In finding that the he was not required to file an administrative complaint before bringing suit, the Second Circuit noted that neither monetary nor declaratory relief were available under the prison's administrative complaint procedures; in fact, the Court noted that "the [prison's complaint] program coordinator returns without reviewing an[y] inmate's administrative complaint that requests exclusively monetary damages." *Id.* at *2. In those circumstances, the *Odumosu* Court

care or supervision and living unit conditions within the authority of the Department of Correction." *Id.* Inmates are required to file a grievance form regarding complaints covered by the Directive; if denied, grievances are subject to three levels of appellate review. *See id.*

Mr. Woodhouse readily concedes that he did not file a grievance regarding the alleged failure to protect him from Mr. Andrews' attack or the fact that he was forced to share a cell with a sentenced inmate. *See* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [doc. # 37] at 3-4. Mr. Woodhouse argues, however, in conclusory fashion, that he is "not required to exhaust [his] administrative remedies in order to pursue [his] failure to protect claim[] where administrative action could afford him neither meaningful review nor appropriate remedy." *Id.* (quoting *Odumosu v. Keller*, 205 F.3d 1324, at *2 (2d Cir. 2000) (unpublished)); *see also Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (discussing the three exceptions to the PLRA's administrative exhaustion requirement). Mr. Woodhouse's argument, however, is unavailing.

In *Odumosu*, the Second Circuit did indeed find that the plaintiff-prisoner was not required to exhaust his administrative remedies before bringing a *Bivens* action against federal correctional officers who allegedly failed to protect him. *See Odumosu*, 205 F.3d 1324, at *2. Its reasoning, however, necessarily confines *Odumosu* to a particular set of facts not present here. In *Odumosu*, the prisoner-plaintiff sought monetary and declaratory relief. In finding that the he was not required to file an administrative complaint before bringing suit, the Second Circuit noted that neither monetary nor declaratory relief were available under the prison's administrative complaint procedures; in fact, the Court noted that "the [prison's complaint] program coordinator returns without reviewing an[y] inmate's administrative complaint that requests exclusively monetary damages." *Id.* at *2. In those circumstances, the *Odumosu* Court

care or supervision and living unit conditions within the authority of the Department of Correction." *Id.* Inmates are required to file a grievance form regarding complaints covered by the Directive; if denied, grievances are subject to three levels of appellate review. *See id.*

Mr. Woodhouse readily concedes that he did not file a grievance regarding the alleged failure to protect him from Mr. Andrews' attack or the fact that he was forced to share a cell with a sentenced inmate. *See* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [doc. # 37] at 3-4. Mr. Woodhouse argues, however, in conclusory fashion, that he is "not required to exhaust [his] administrative remedies in order to pursue [his] failure to protect claim[] where administrative action could afford him neither meaningful review nor appropriate remedy." *Id.* (quoting *Odumosu v. Keller*, 205 F.3d 1324, at *2 (2d Cir. 2000) (unpublished)); *see also Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (discussing the three exceptions to the PLRA's administrative exhaustion requirement). Mr. Woodhouse's argument, however, is unavailing.

In *Odumosu*, the Second Circuit did indeed find that the plaintiff-prisoner was not required to exhaust his administrative remedies before bringing a *Bivens* action against federal correctional officers who allegedly failed to protect him. *See Odumosu*, 205 F.3d 1324, at *2. Its reasoning, however, necessarily confines *Odumosu* to a particular set of facts not present here. In *Odumosu*, the prisoner-plaintiff sought monetary and declaratory relief. In finding that the he was not required to file an administrative complaint before bringing suit, the Second Circuit noted that neither monetary nor declaratory relief were available under the prison's administrative complaint procedures; in fact, the Court noted that "the [prison's complaint] program coordinator returns without reviewing an[y] inmate's administrative complaint that requests exclusively monetary damages." *Id.* at *2. In those circumstances, the *Odumosu* Court

held that "administrative action could afford [the plaintiff] neither meaningful review nor appropriate remedy," and that, therefore, "the benefits of exhaustion do not obtain in this case." *Id.* Accordingly, it did not require the plaintiff "to engage in the futile pursuit of seeking administrative remedies that are not available." *Id.*; *see also Ruggiero*, 467 F.3d at 175 (explaining that one exception to the exhaustion requirement is where "administrative remedies are not available to the prisoner") (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)); *but see Handberry v. Thompson*, 446 F.3d 335, 341 (2d Cir. 2006) ("[T]he PLRA require[s] exhaustion if available administrative process had the ability to provide 'some relief for the *action* complained of,' even if grievance procedures could not provide the relief sought." (quoting *Booth*, 532 U.S. at 738-39) (emphasis in original)).

Here, in contrast to *Odumosu*, there is no evidence that the administrative grievance process could not have provided Mr. Woodhouse with a remedy. Indeed the Directive provides that remedies may include, but are not limited to "[c]orrective action to rectify the matter being grieved," "[c]hanges in written policy and procedures or in interpretation or application of written policies and procedures," and "[d]evelopment of policies and procedures pertaining to the grievance." Admin. Directive 9.6 ¶ 7, attached as Ex. 17 to Def.'s Mot. for Summ. J. [doc. # 32]. Since Mr. Woodhouse has failed to demonstrate that he could not have obtained some relief through the administrative grievance procedures available to him, his failure to exhaust may not be excused on that basis. *See Ruggiero*, 467 F.3d at 175; *Handberry*, 446 F.3d at 341.

Further, Mr. Woodhouse has not presented evidence supporting either of the two other exceptions to exhaustions. *See Ruggiero*, 467 F.3d at 175. Captain Carroll has not waived the exhaustion requirement, as he pleaded it as an affirmative defense and argues it here on summary judgment. *See* Answer [doc. # 15] at 2; *Jones*, 549 U.S. at 216 (holding that a prisoner-plaintiff's

failure to exhaust under the PLRA is an affirmative defense that can be waived by a defendant's failure to raise it); *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) ("[Defendant] raised this [exhaustion] defense in his answer to [the prisoner-plaintiff]'s complaint and has continued to assert it throughout this litigation. Thus, he has not waived the non-exhaustion defense."). Finally, Mr. Woodhouse has not pleaded, argued, or presented any evidence suggesting that "special circumstances" justify his failure to comply with the administrative exhaustion requirement, *see Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004); *Hemphill*, 380 F.3d at 686, 690, and therefore this final exception to the exhaustion requirement is similarly unavailable to him. Having failed to exhaust his administrative remedies or to provide a justification for that failure, the Court may not consider Mr. Woodhouse's claims. *See* 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 90; *Booth*, 532 U.S. at 739; *Ruggiero*, 467 F.3d at 175; *Neal*, 267 F.3d at 122. Therefore, Captain Carroll's Motion for Summary Judgment [doc. # 32] is GRANTED pursuant to 42 U.S.C. §1997e(a) due to Mr. Woodhouse's failure to exhaust his administrative remedies, and this case is DISMISSED, but without prejudice to Mr. Woodhouse re-filing his Complaint after he has fully exhausted. *See Chavis*, 333 Fed. Appx. at 644 (affirming the granting of summary judgment to defendants and the dismissal of the prisoner-plaintiff's claims without prejudice for the failure to exhaust administrative remedies); *Ferrera v. Fisher*, No. 06CV1158, 2008 WL 4443920, at *15 (S.D.N.Y. Sept. 30, 2008) (following the same procedure).

However, if Mr. Woodhouse does seek to re-file this case at a later date, he is advised that this Court, at least, has recently held that housing a pre-trial detainee with a sentenced inmate does not, without more, violate the constitutional rights of the pre-trial detainees. *See Silvera*, 2010 WL 2232471, at *11-13. As the Court explained:

> [C]ourts that have considered th[is] issue after *Jones* [*v. Diamond*, 636 F.2d 1364, 1374 (5th Cir. 1981) (en banc)] have . . . found that absent allegations that the pretrial detainee suffered an injury from being housed with one more convicted inmates, or that the placement with convicted inmates was intended to punish the pretrial detainee, the pretrial detainee's rights to due process are not violated merely because he is forced to share a cell with a convicted prisoner. . . .
>
> At most, the Complaint [in *Silvera*] suggests that sharing a cell with [a sentenced inmate] exacerbated [the pretrial detainee's] already troubled mental state . . . . But insofar as this allegation, standing alone, involves no more than a dignitary harm, it cannot support an independent due process claim. . . . And while the Complaint alleges that the conditions at the [prison] were insufficient as to [the pretrial detainee's] particular needs, Plaintiff has not alleged that the facility suffered systemic failures that extended beyond the admittedly tragic circumstances of [the pretrial detainee's suicide] death. . . . Since Plaintiff has alleged neither an injury nor an intent to punish, she cannot premise a due process claim on the mere fact that [the pretrial detainee] was forced to share a cell with a convicted inmate.

*Id.* at *12-13 (citations omitted); *see also Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir. 1988) (affirming summary judgment to defendants where the pretrial detainee had not alleged or offered evidence that he was injured by his cell placement with convicted inmates); *Burciaga v. County of Lenawee*, 123 F. Supp. 2d 1076, 1078-79 (E.D. Mich. 2000) ("[T]he overwhelming weight of persuasive authority holds that . . . unless the state acts with the impermissible intent to punish a pre-trial detainee or is deliberately indifferent to a pre-trial detainee's safety, it does not violate the due process clause to house that pre-trial detainee with a sentenced inmate."); *Faulcon v. City of Philadelphia*, 18 F. Supp. 2d 537, 540 (E.D. Pa. 1998) (granting summary judgment to defendants because "Plaintiff presents no evidence to support his contention that the commingling of [pretrial detainees with convicted prisoners] is so obviously dangerous that to allow it to occur is deliberately indifferent."); *Martin v. Kerney*, No. 00CV1055, 2002 WL 531553, at *1 (D. Del. Mar. 27, 2002) ("[A] lawfully held pretrial detainee does not have a liberty interest in being housed in a separate unit from sentenced inmates."). While Mr. Woodhouse may not like the fact that he, while held as a pretrial detainee, was forced to share a

cell with Mr. Andrews, a sentenced inmate – and understandably, if the allegations regarding Mr. Andrews' attack are true – but that fact, standing alone, simply does not rise to the level of a constitutional violation, at least in this Court's view.

### IV.

**For the foregoing reasons, Captain Carroll's Motion for Summary Judgment [doc. # 32] is GRANTED and Mr. Woodhouse's Motion for Summary Judgment [doc. # 29] is DENIED, and this case is DISMISSED, without prejudice, for Mr. Woodhouse's failure to exhaust his administrative remedies, as required by 42 U.S.C. §1997e(a). If Mr. Woodhouse chooses to appeal this decision, he may not do so *in forma pauperis*, as such an appeal would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3)(2000). The Clerk is directed close this case.**

                                              IT IS SO ORDERED.


                                       /s/  Mark R. Kravitz
                                            United States District Judge

**Dated at New Haven, Connecticut: August 2, 2010.**